UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBERT CORNELIUS TILLER,

    Petitioner,

    v.                              CAUSE NO.: 3:19-CV-537-JD-MGG

WARDEN,

    Respondent.

OPINION AND ORDER

Robert Cornelius Tiller, a prisoner without a lawyer, filed a habeas corpus petition challenging a disciplinary proceeding at Indiana State Prison (ISP 19-03-0209) in which he was found guilty of battery. (ECF 1.) He was sanctioned with the loss of 90 days of earned-time credits and a demotion in credit-earning class. (*Id.* at 1.)

The charge was initiated on March 18, 2019, when Lieutenant D. Lott wrote a conduct report stating as follows:

> On 3-18-19 at approximately 11:43 am, A 10-10 was called on the CCH walkway. While reviewing the cameras it was seen that Offender Robert Tiller [BM] #146901 who is housed in A 214 was fighting Offenders Joshua Dyer [WM] #218679 out of CE 111 and Montrel Humphrey [BM] #258730 out of A 435. All 3 Offenders were seg screened and moved to DCH.

(ECF 7-1). An incident report was also completed stating as follows:

> On 3-18-19 at approx. 11:43am a 10-10 was called by Officer Anthony Washington (BM) who witnessed a fight taking place on the CCH walk. Offenders Humphrey, Montrell #258730 of ACH 435 (BM) and Offender Tiller, Robert #146901 of ACH 214 (BM) can be seen on the CCH Entrance Camera at approx 11:41 am waiting for Offender Dyre,[1] Joshua #218679 of

---

[1] The report misspelled Dyer's last name.

> CCH 110-E. Once Offender Dyre leaves the cell house he is then attacked by both Offenders on the CCH walk. All three Offenders can be seen exchanging blows until Offender Dyre is knocked to the ground. Offender Tiller can then be seen kicking Offender Dyre as Offender Humphrey walked away. As Offender Dyre got back to his feet Offender Tiller is seen running towards E-dorm and is stopped and placed in restraints by Officer Washington. Offender Humphrey was later found by Lt. Lott and placed in restraints. All Offenders were suicide screened and had the opportunity to be seen by medical before being placed in DCH. Offender Humphrey was placed in DCH 231-E, Offender Tiller was placed in DCH 407-E and Offender Dyre was placed in DCH 502-W. All Offenders will receive a conduct report for #212 Battery.

(ECF 7-2)

On March 27, 2019, Mr. Tiller was formally notified of the charge. (ECF 7-3.) He pled not guilty and requested a lay advocate, and one was appointed for him. (*Id.*) He requested a witness statement from inmate Humphrey to attest "that I wasn't fighting with him and was defending myself from Dyer." (*Id.*) He also requested surveillance video to "show that Tiller wasn't fighting. The fight came to him & [he] was defending himself . . . from Dyer." (*Id.*) A statement was obtained from inmate Humphrey, who stated: "Tiller was going to class (NSB) & Dyer seen him & charged at him with a fury of punches & Tiller reacted by defending himself." (ECF 7-5) (errors in original). The hearing officer reviewed the surveillance video, and summarized it as follows:

> Video review shows that at 11:41 AM Tiller and offender Dyer throwing punches at each other. At 11:42 offender Dyer falls to the ground and offender Tiller proceeds to punch and kick the offender while hes down on the ground.

(ECF 7-8) (errors in original). On March 28, 2019, the day after the screening, Mr. Tiller requested that a statement be obtained from inmate Dyer "in hopes that he'll tell the

2

truth that he started the fight and I only defended myself[.]" (ECF 7-4.) The hearing officer denied this request "based on video." (*Id.*)

On April 4, 2019, the hearing officer held a hearing on the charge. (ECF 7-7.) Mr. Tiller made the following statement in his defense: "I was attacked and defended myself. I wasn't in the wrong he came after me." (*Id.*) Based on the evidence, the hearing officer found him guilty. (*Id.*) The hearing officer imposed a previously suspended sanction of 90 days of earned-time credits from another disciplinary case and also demoted him in credit-earning class. (*Id.*) Mr. Tiller pursued administrative appeals, but they were denied. (ECF 7-9; ECF 7-10.) He then filed this petition. (ECF 1.)

When prisoners lose earned-time credits in a disciplinary proceeding, the Fourteenth Amendment Due Process Clause guarantees them certain procedural protections: (1) at least 24 hours advance written notice of the charge; (2) an opportunity to be heard by an impartial decisionmaker; (3) an opportunity to call witnesses and present documentary evidence when consistent with institutional safety and correctional goals; and (4) a written statement by the fact-finder of evidence relied on and the reasons for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539 (1974). To satisfy due process, there also must be "some evidence" to support the hearing officer's decision. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Mr. Tiller raises four claims in his petition: (1) the hearing was untimely because it was held 17 days after the conduct report was issued; (2) there was "tampering" of witnesses, because the hearing officer would not permit inmate Dyer to submit a statement showing that he was the aggressor in the fight; (3) he is not guilty because

3

Dyer started the fight; and (4) the complete video footage would show that Dyer was the aggressor.[2] (ECF 1 at 2-3.)

Mr. Tiller first claims that the hearing was untimely because "the date of the incident and the filing of the disciplinary filing was March 18, 2019; however, the DHB hearing was held 17 days later . . . on April 4, 2019." (ECF 1 at 2.) It can be discerned that Mr. Tiller is relying on the Indiana Department of Correction Disciplinary Code for Adult Offenders, § VIII(A)(2)(b)(3), which provides: "Generally, the Disciplinary Hearing shall be held within seven (7) days (excluding weekends and holidays) of the alleged violation." (ECF 7-12 at 19.) Even if he is correct in his argument, a violation of internal prison policy or other state law does not present a cognizable basis on which to grant him federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (inmate's claim that prison failed to follow internal policies and procedures in prison handbook had "no bearing on his right to due process").

In claim two, the court understands Mr. Tiller to be arguing that he was denied evidence because the hearing officer would not obtain a statement from inmate Dyer to show that he was the aggressor in the fight. (ECF 1 at 2.) The full panoply of rights available at a criminal trial are not applicable in the prison disciplinary context, and inmates have no general right to "confront and cross examine adverse witnesses."

---

[2] The court notes that by operation of N.D. IND. L.R. 47-2, Mr. Tiller was required to file his traverse by November 21, 2019. None was received by that deadline. Out of an abundance of caution, the court reset the deadline to August 17, 2020. (ECF 12.) That deadline passed nearly 60 days ago and no traverse has been filed.

4

*Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). Nevertheless, an inmate does have a right to request and present evidence when consistent with institutional safety and correctional goals. *Wolff*, 418 U.S. at 564.

At screening, Mr. Tiller requested a witness statement from inmate Humphrey and a review of the surveillance video. (ECF 7-3.) A statement was obtained from inmate Humphrey, and the hearing officer also reviewed the surveillance video. (ECF 7-5; ECF 7-8.) Mr. Tiller subsequently requested a statement from inmate Dyer, but the hearing officer denied this request "based on video." (ECF 7-4.) The hearing officer's cursory statement does not provide much illumination of his reasoning for denying the request, although he may have meant that the statement would have been duplicative in light of the video evidence, which spoke for itself. In any event, Mr. Tiller only had a right to this evidence if it was exculpatory. *Rasheed-Bey*, 969 F.2d at 361; *see also Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (harmless error analysis applies to prison disciplinary proceedings). "Exculpatory" in this context means evidence which "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). A statement from inmate Dyer that he started the fight would not have exculpated Mr. Tiller from the battery charge because "self-defense" and "justification" are not recognized defenses in the prison disciplinary context. *Scruggs v. Jordan*, 485 F.3d 934, 939 (7th Cir. 2007). That is because "encouraging inmates to combat violence with more violence subverts a core prison function of ensuring order and safety within the institution." *Id.* Based on the record, he has not established a due process violation.

In claim three, the court understands Mr. Tiller to be arguing that there was insufficient evidence on which to find him guilty of battery, because inmate Dyer started the fight. (ECF 1 at 3.) There need only be "some evidence" to support the hearing officer's decision to satisfy due process. *Hill*, 472 U.S. at 455. As the Seventh Circuit has explained:

> This is a lenient standard, requiring no more than a modicum of evidence. Even meager proof will suffice, so long as the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000). A conduct report alone can be sufficient evidence to support a finding of guilt. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999). Likewise, circumstantial evidence can be sufficient to satisfy the "some evidence" test. *Meeks*, 81 F.3d at 721.

The Disciplinary Code defines battery as "[k]nowingly or intentionally touching another person in a rude, insolent, or angry manner; or in a rude, insolent, or angry manner [placing] any bodily fluid or bodily waste on another person." (ECF 7-11 at 1.) Here, the conduct report, incident report, and the video evidence provide sufficient evidence of Mr. Tiller's guilt. Although Mr. Tiller claims that inmate Dyer started the fight and he was only defending himself, as stated above, self-defense is not a valid defense in the prison disciplinary context. *Scruggs*, 485 F.3d at 939. In other words, the fact that inmate Dyer may have thrown the first punch did not give Mr. Tiller the right to punch and kick inmate Dyer. He is not entitled to habeas relief on this ground.

In his final claim, the court understands Mr. Tiller to be claiming that he was denied video evidence. (ECF 1 at 3.) At screening, Mr. Tiller requested the surveillance video to show that he was essentially minding his own business when inmate Dyer attacked him, and that he was only "defending himself" in hitting Dyer back. (ECF 7-3.) The hearing officer did review the surveillance evidence and considered it in reaching a decision. (ECF 7-6: ECF 7-7.) Mr. Tiller may be claiming that his rights were violated because this evidence was not turned over to him for his own review. Mr. Tiller had a right to request evidence in his defense, but not necessarily to personally review the evidence. *White v. Ind. Parole Bd.*, 266 F.3d 759, 767 (7th Cir. 2001). That is because "prison disciplinary boards are entitled to receive, and act on, information that is withheld from the prisoner and the public." *Id.* The Seventh Circuit has recognized that disclosing video evidence to inmates entails security risks. *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003). Specifically, the prison has a "bona fide security justification for non-disclosure," because viewing the video "might allow the inmate to learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future." *Jones v. Cross*, 637 F.3d 841, 848-49 (7th Cir. 2011) (citation and internal quotation marks omitted). The court has reviewed the camera evidence and concludes that disclosure to Mr. Tiller would pose the security risks outlined by the Seventh Circuit. Additionally, based on this court's viewing, the video is inculpatory rather than exculpatory. *See Rasheed-Bey*, 969 F.2d at 361. Mr. Tiller appears to argue that additional portions of the video would have shown that inmate Dyer started the fight, although from this court's viewing, the entire incident appears to be captured on the video

7

considered by the hearing officer. In any event, evidence that Dyer started the fight would not have exculpated Mr. Tiller from the charge for the reasons already outlined. *See Scruggs*, 485 F.3d at 939. He has not established a due process violation.

For these reasons, the court:

(1) DENIES the habeas corpus petition (ECF 1);

(2) DIRECTS the clerk to enter judgment in this case.

SO ORDERED on October 14, 2020

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT